Manor Nursing Home v. Department of Revenue. Mr. Luby. Good morning. David Luby on behalf of Lindsay Manor Nursing Home. May it please the Court. Your Honors, this case presents a question of first impression within the Tenth Circuit regarding the construction and application of the Internal Revenue Code, Section 6343A1D, and whether its economic hardship relief provisions contained therein apply to non-individual taxpayers. Section 6343A1D currently provides that the IRS shall release a levy upon all property if the IRS so determines that such levy is creating an economic hardship due to the financial condition of a taxpayer. Although there is no restriction within the statute itself with respect to the term taxpayer, the IRS has taken the position that only individual taxpayers can suffer economic hardship in the face of an IRS levy. As a result, the IRS has created a bright-line rule that corporations can never suffer an economic hardship. Before we get to the regulation, just clarify kind of the fact part for me. What's the economic hardship that you allege? Sure. The economic hardship here is that the nursing home failed to receive its Medicare and Medicaid funding in a timely fashion and was unable to meet most of its basic operational necessities, which included its employment tax liabilities. And so we asked for a collection due process hearing on the grounds of economic hardship, showing that due to the untimely payments from the federal government, that we were unable to meet the payroll tax liabilities as they became due. Now, is that hardship ongoing? Well, it's a hardship with respect to when there's an all-source levy on bank accounts, account receivables, essential business property of a corporation where they can't meet any of their operational necessities. They can't meet payroll. They can't pay current taxes. Is the hardship ongoing today? Well, currently this is a proposed levy. The nursing home is in a receivership, so there is a hardship. They do have assets. They are a viable corporation, but they are in receivership at this point. Why hasn't it moved then? Aren't we moot? No, I don't think it's moot, Your Honor. There's no case law within the Tenth Circuit that indicates that being in a receivership moots the case. Lindsay Manor is a viable corporation under Oklahoma law. It does have assets. It is in receivership. The government has tried to collect. Well, it's not making payroll in Oklahoma as we speak, is it? Well, it is making payroll through the receivership because there's a different operator. That's not the hardship that was asserted before the IRS. Well, the problem becomes is that if the levy were to go through, then they would freeze all of their assets. So whatever is in the bank accounts, I mean, there is an ongoing lot of controversy with respect to these employment taxes. I'm sorry. Go ahead. Well, it's more than just that it's in receivership. The receivership has assigned or sold the nursing home. It's not being operated by your client anymore, and that was the specific assertion of hardship, as I recall, was the operating expenses couldn't be paid for that nursing home. There's no possibility at this point that you can maintain that injury any longer. That's the injury that you asserted, inability to pay the operating expenses for that nursing home. Right. Well, Mr. Jewell still owns the nursing home, even though it's being operated by somebody else. Once the receivership is over, the government has not conceded the liability. But Oklahoma law, doesn't Oklahoma law place the responsibility in the receiver to operate the asset, the nursing home, for the benefit not only of the owner of the company, your client, but also for the creditors, such as the IRS? That's true, Your Honor. Well, so if the receiver is operating the nursing home in part for the benefit of the IRS, why is Lindsay Manor Nursing Home your client? Why is its interest in a hardship ongoing if the receiver is no longer operating the entity solely for the purpose of benefiting the owner? Well, I would answer that by saying that the liability is still at issue. The government has not conceded the liability. They intend to collect upon it. They've asserted to this court that they intend to collect on the liability. You've not challenged the liability, have you? Well, the liability has not been challenged because the nursing home filed the 941. We agree that the liability is due and owing to the federal government. So that's a separate issue than the economic hardship issue, isn't it? It would be, and we're not challenging the liability. But if we were to, if the IRS were to move forward and have enforced collection through an all-source levy on all of its available assets that are left from the receivership because the company is not closed and they do not intend to concede the liability, and so there is economic relief that this court can afford. Lindsay Manor does have a personal stake in the outcome of this case. And we feel that if the court were to grant economic hardship relief, there is certainly relief that Lindsay could have in order to work out a prior collection alternative, either through an installment agreement or an offer in compromise. That's not the argument you made to the commission for your economic hardship. I mean, I'm sure there's a hardship for a $100,000 levy or whatever the number is, but that's not the position you took before the commissioner. It was you couldn't pay salaries for an ongoing operation. And that operation is no longer ongoing. Your client's not permitted to operate nursing homes in Oklahoma. How do we get around that? Well, Mr. Jewell still has an intention of reapplying for the license. I think there's a case law from the Ninth Circuit that indicates that not having a license to operate but with an intention to reapply in the future wouldn't moot a case. Isn't that speculative? I'm speculative because Mr. Morgan, the original receiver, as I understand it, has a pending motion in Oklahoma County District Court to liquidate the assets. And as I understand it, Judge Timmons hasn't yet ruled on that motion, at least from checking the docket sheet. And so if there's a pending motion to liquidate the assets, it really doesn't matter if Mr. Jewell ultimately succeeds in reacquiring his license because there may not be any more nursing home by the time he applies or obtains that license. Well, I think given the fact that there's still a remaining liability at issue and the government hasn't conceded it, that there is a lot of controversy with respect to those liabilities. And so the corporation has not ceased to exist. But am I right, though, that Mr. Morgan has a pending motion to liquidate the assets? I believe that's true, but I'm not certain whether or not that's been ruled upon at this point. If it's ruled upon, would you agree that it's moot? Because there would be no more nursing home. Well, if there's an intention to reapply in the future to get the available certificate of needs, to have available financing, the liability is not going to go away. And so in this particular situation, the government intends on enforcing the liability against the nursing home in whatever form it's operating in the future. And because there are assets available, I do think there's a personal stake and interest that Lindsay has in this particular, the outcome of this case. Why would its desire to operate nursing homes in the future, or its hope that it will be able to do so, be a concrete injury that would give us jurisdiction over this? Why isn't it, it's moot currently, I mean, basically, is what you're saying. And you hope that at some point maybe you'll have a live controversy again. I don't think it's moot currently, Your Honor. I believe that there is a current controversy with respect to these liabilities. If the government concedes the issue, I would agree it's moot. Even though you've conceded that the liabilities aren't at issue and you haven't made them an issue in this particular proceeding? Well, certainly with respect to economic hardship relief, the liabilities remain outstanding. And if this Court were to find the appeal to be moot, then they would move forward to collect on what assets are available. And they've done that in the past here. During the receivership, trying to levy on pre-receivership liabilities in addition, they even consider an offer in compromise to settle those liabilities during the pendency of this appeal. So I think the government clearly wants to collect on these liabilities. No question, right. Did you represent the company in the lower court, in the tax court proceedings? I did, yes. Why didn't someone let the lower courts know about this? It seems like we shouldn't be considering this in the first instance. It would have been relevant to their inquiry. Apparently, no one notified them of the receivership. And it was ongoing at the time. Is that right? Well, that's correct, Your Honor. And the reason being is... It certainly was relevant to their consideration of the economic hardship claim had you prevailed on that claim. At the time... Were you planning to just wait and tell them if you've prevailed or on the legal issue? No, Your Honor. Based on the research that I conducted, there was no case within the Tenth Circuit that says a receivership moves the case. They're still a taxpayer. They're not a separate entity in any way, shape, or form. But it just seems to me it's relevant to your claim, which is that you are unable to pay operating expenses for an ongoing entity. Well, they still weren't able to pay their taxes through the receivership. All right. So you just didn't think it was relevant that you were in receivership? I did not think it was relevant at the time because obviously the liabilities were at issue. The taxpayers still exist. They're still paying taxes. They have to pay the pre-receivership liabilities as well. So we didn't feel that it was relevant to this particular issue. So we would assert that the case has not moved, just given the fact that there remain these liabilities that the government wants to collect on this nursing home. So if there is economic hardship relief that is given by this court, certainly Lindsay Manor would have real-world economic effect. But I asked you earlier, and you've not challenged the liability itself, have you? No, Your Honor. We agree with you. So you just want to avoid the payment under the economic hardship regulation? We don't want to avoid payment. We want to have the opportunity to demonstrate to the IRS that they are suffering from an economic hardship based on these circumstances and as a result should be afforded the opportunity under the statute, as individual taxpayers are, to determine whether they should have that relief. I mean, a corporation that's pyramiding their tax liabilities or not doing what they're supposed to do shouldn't have economic hardship relief. But they should be afforded the opportunity to demonstrate to the IRS. Shouldn't we give Chevron deference to the Commissioner's interpretation of the statute? I would say no, and the reason I would say no is that I believe it's an impermissible construction of the statute. If you look at the term taxpayer as used within the code section, it includes any person subject to any internal revenue tax. And this Court itself, when you define the term person, this Court found that Congress unambiguously intended for the term person to mean and encompass all legal entities, which includes corporations. So we feel that it was an arbitrary construction of the statute to restrict that relief solely to individual taxpayers. Instead of allowing a corporation to demonstrate economic hardship relief in that situation, there was simply no statutory gap for the IRS to fill with respect to the term taxpayer. Although Congress gave them the authority to determine what circumstances constituted economic hardship relief, it did not give them the authority to restrict that relief solely to individual taxpayers. So in this situation, what the government is asking this Court to do is to substitute the IRS's judgment for that of Congress. And unfortunately, the IRS does not have the authority to alter, amend, or add to provisions that which Congress left out of the statute. Congress did not restrict the relief to individual taxpayers. They used the general term taxpayer, which encompasses all legal entities. So we would assert that the regulation should be afforded no deference under the Chevron standard. And when you look at how the tax court upheld the regulation, they relied upon 7122 of the Internal Revenue Code and its regulations. And in that statute, Congress restricted the relief to basic living expenses. And those dealt with offers and compromise on the grounds of effective tax administration. And those are generally done on equitable grounds. And so Congress restricted the statute in a way it did not do under Section 6343a1b. And so when you're submitting an offer in compromise, corporations can do that. They can do it on dollars-to-liability standards and dollars-to-collectability standards. So they're not foreclosed from relief to resolve their employment tax liabilities. And the employment tax scheme can never be forwarded. If it was going to be forwarded, Congress wouldn't even allow these collection alternatives to exist. There would be no installment agreements or offers in compromise for corporations if they thought the employment tax scheme would crumble. We're simply asking for corporations to have the opportunity, as the statute seems to indicate through its plain language, to be able to demonstrate economic hardship relief. The problem with getting a Treasury regulation that ignores the economic realities, the corporations can't suffer economic hardship if everything is levied simultaneously. That's how this would work. A levy is sent out there simultaneously on everything they own, and they can't meet any of their operational necessities. And the government takes the position that that, in and of itself, is not a hardship. And so if they can't meet current taxes, can't meet payroll, can't meet insurance or maintenance or any of the other issues that a business has, then they're just precluded and foreclosed from any relief. Such a position has to be against public policy. There can't be an inherent congressional tax policy to foreclose individual businesses regardless of the circumstances that led to them not being able to pay their tax liabilities. I think that's an arbitrary and capricious construction of the statute, and it should be overruled. And we don't feel that the case is moot. I know the court has focused quite a bit on that, but we do feel there's economic relief here available. There is a live case of controversy with respect to those liabilities because the IRS is going to go get them. If this court finds it to be moot, they're going to immediately move in their receivership to try to collect, and if there's anything left from the receivership, they're going to try to collect. And so if there's a personal stake in the outcome of the case, then certainly we think the court should rule on the merits. And if they don't feel that the case is moot in some way, we would ask the court to dismiss the lower court's ruling with instructions to dismiss because the legal merits haven't been addressed here. Thank you, counsel. I guess I could reserve the rest of my time. You can reserve the rest of your time. Thank you. Thank you. Let's hear from the commissioner, Ms. Lyon. Thank you, Your Honor, and may it please the court. In this appeal, Lindsay Manor sought only to introduce herself. I'm sorry. Kathleen Lyon for the commissioner. Thank you, Your Honor. In this appeal, Lindsay Manor sought only a determination that it is eligible for economic hardship relief from levy akin to that available to individuals. That is, that its basic operating expenses be free from levy, just as an individual's basic living expenses are free from levy where economic hardship is shown. However, that question is now moot. Lindsay Manor has conceded that it doesn't have any operations to which economic hardship relief from the proposed levy could apply. Well, let me ask you about that. Your opposing counsel said that the ownership of the nursing home has not changed. Maybe the entity in charge of managing the nursing home has changed, but Mr. Jewell still has an ownership interest in the nursing home. As I understand it, he has an ownership interest in Lindsay Manor Nursing Home, which is a corporation. That corporation doesn't have anything to do with the actual nursing homes being operated at those facilities now. A third party under a different name with a different corporation is running it now, and the receiver is now in this situation where it's just dealing with the corporation and its debts, its liabilities. So that's how I understand it. Okay. Let me ask you this, maybe to help me understand how this receivership operates in practice. Let's say the current receiver, the substitute receiver, is very successful and makes a million-dollar profit. And so I assume that the receiver then would use that million-dollar profit, in part, to distribute the profits to creditors, such as the IRS, and also to Mr. Jewell's corporation, the owner of the nursing home. And so if that – first of all, is that correct? I guess I am still taking issue with the ownership of the nursing home. He owns a corporation. Okay, so – It doesn't have anything to do with what's going on at that facility. And that facility – that operation is now owned by somebody else. Okay. Doesn't Mr. Jewell's corporation still own the nursing home? No, the corporation – the operations have been transferred to another – first, he never owned the physical facility, just to be clear. Right. It was owned by – Crinnick, yes. Crinnick, right. And the operations of the nursing home are now being handled by Lindsay Manor Nursing and Rehab, which is a different corporation owned by a different person. They don't have anything to do – Lindsay Manor Nursing Home doesn't have anything to do with what's going on. It doesn't have to do with the operation, but it's – the ownership hasn't changed, right? Well, he doesn't own a nursing operation anymore. He doesn't – he owns an entity called Lindsay Manor Nursing Home. But they don't have any operations right now. What assets do they still have? Well, we don't know yet. I mean, thus far, we've been working off of the state court receivership documents, and we can't tell what resources it has right now. But because they don't have any operations ongoing, there's no traceable harm based on the proposed levy – based on the proposed levy's effect on its operations, because its operations are defunct. And as a result, it doesn't have any personal stake or any legally cognizable interest in the outcome of the only question in this case, which is its eligibility for economic hardship relief. With respect to the liability that's outstanding and that the IRS could still collect if this case is dismissed, that doesn't create a personal stake in this case, where the only question is their eligibility for economic hardship relief. And it doesn't create a personal stake in any other collection issues, because they don't – they don't actually have a continuing interest in collection beyond this appeal, because they have waived all other challenges to any collection of its liabilities. That was the Lindsay Manor II decision, which they did not appeal. So they – in the CDP proceeding, they brought up everything, including economic hardship relief. They didn't appeal the tax credit decision on the other issues, and so the only collection issue is this economic hardship claim, which we posit is now – Could they – are you saying that they could not reassert economic hardship if we dismissed? On some other grounds? Well, the only grounds that they have said – I mean, their whole idea of economic hardship is that it goes to the basic operating expenses. Right. I'm with you on that. But if they could reframe it, you know, come up with another excuse below. I mean, is that possible? Well, I mean, given that they are, as we have argued, not eligible in the first instance, I mean, they can make any argument they want, but if a non-individual is not eligible, then they're not eligible. Setting aside whether a corporation is eligible, they could – you know, they could argue another economic hardship theory in front of the tax court? Are you saying those are – Based on this levy? Yes. No, I mean, this levy would have been resolved, I think. I mean, their challenges to this levy would have been resolved. They can't make new challenges? Well, this is the only remaining issue from the CDP proceeding, and so the question in the CDP proceeding is, is this levy appropriate? Is this proposed levy appropriate and may it go forward? And all of the other issues that they had – all the other collection issues that they had challenged are not at issue anymore because they decided not to appeal those. And so once this issue is moot, I mean, there's nothing more to be done on that. With respect to the statute itself – Are you going to – I didn't want to interrupt you, but if you're about to go to the Barrett's, I did want to ask you about whether we should order a vacater of the tax court decision. As I understand it, it turns out that if you're right about mootness, that the matter actually became moot prior to the appeal while the case was still in tax court. Under the Rios Grande case, wouldn't we have to – wouldn't just the ordinary procedure be to order a vacater of the lower court, the tax court's decision, because when the tax court rendered a decision, in reality, under your theory, the case would have become – already become moot. Well, while we do think – part of our motion to dismiss for mootness was based on the change in relationship that Lindsay Manor had to the operations when the receiver took over. But whether it became moot at that point was still a little bit up in the air. Why? In terms of – well, you know, we don't think – the receiver was certainly not acting only for Lindsay Manor, but I guess what I'm saying is it only clearly became moot to us when these operations closed. You learned of it. You're talking about when you learned of it and when it became moot are two maybe different things. Well, when you're talking about not having operations anymore, that didn't occur until October of 2017 for sure. We think it was underway in July 2017 when they started to enter these agreements with the third party to take over the operations. But the operations weren't actually taken over until – When was Mr. Morgan appointed as a receiver? Oh, that was – well, I guess that was in July 2016 when the receivership was established. Okay, so when Mr. Morgan was appointed as a receiver under Oklahoma law at that point, the owner of the nursing home, this corporation, no longer, as you pointed out earlier, no longer had an interest in the nursing home. It was now in the hands of the receiver who, as you just commented, was operating the nursing home now, not only for the benefit of the owner, the corporation, but also for creditors like the IRS. Yes. So why didn't Mr. Morgan's appointment in July 2016 – I thought that was your whole argument, that the appointment of a receiver is what mooted the case. Well, that was certainly part of our argument. And if that was moot at that time, then I suppose the tax court's opinion, which came about nine months later – March 23rd, 2017? Yes, yeah, 2017. In that respect, if this court agrees that that was moot at the receivership stage as opposed to when it lost its operations, then maybe that – maybe it would have to vacate. But our argument – Well, why shouldn't we arrive at that conclusion? I thought that was the logical import of your whole argument. Well, we don't think the opinion should be vacated. I mean, the standard is that you vacate when there are circumstances beyond the party's control and for which the party is not responsible. And here we think, you know, the receivership itself was a function and a direct result of conscious decisions made by the business, and in particular with respect to its tax liabilities, as it's been a decade. Well, the case law you cited to us in your brief, if I'm not mistaken, was discussing the manipulation of mootness in connection with a matter where a matter becomes moot on appeal. But as we just talked about, the matter, under your theory, didn't become moot during the impendence of the appeal. It became moot nine months prior to the tax court's decision. Well, yes. When we were doing the motion to dismiss, we were as yet uncertain about what the receivership would mean in terms of the company's role with respect to the corporation and whether it lost all interest or whether it was truly a moot case. It's just that it became very clear, once it lost operations, that it was moot. Now, granted, vacator is an equitable determination. We recognize that. And here we just think that the equities don't lie in Lindsay Manor's favor in the sense that, you know, they didn't tell the tax court about the receivership. If they had, the tax court, sua sponte, or by the party motions, could have sent it back to the appeal. I do have a question about that. To me, your brief reads like we should, as a punitive measure almost, not vacate the lower court's order. And I don't see any authority for that or any support for that. I don't see that it fits into our case law. No, Your Honor. You don't have to see it as. . . It sounds punitive the way you describe it. I mean. . . Well, I mean, all we're trying to say is that there are equities involved here, and we didn't think that the equities weighed in their favor. It is an equitable decision. And so I don't think that you have to see it as punishment in order, you know, to rule for us. But that's what we're trying to say. So with respect to the statute itself, we believe that the statute is silent or ambiguous as to whether or not individuals are eligible. The definition of taxpayer in the code is not just positive of eligibility, in our view. Congress has used the word taxpayer in many different ways in different circumstances. And so you really have to look at Congress. You think the commissioner could promulgate a regulation, hypothetically, that defined taxpayer in 6343 to include not only individuals, natural persons, but the converse. You could promulgate a regulation that said that only corporations were eligible for economic hardship. Well, again, I think that the reach of that provision depends on economic hardship and what that means. And I don't think that you can know what taxpayer means until you are looking at the full context. Well, taxpayer is defined. I guess I am a little confused about your position. Why isn't it the reverse? You have a defined term, taxpayer, that includes corporations. Why don't you then have to interpret the word hardship or the two words, economic hardship, such that they reflect what that might mean as applied to the definition of taxpayer? And you've done just the opposite. You've taken these undefined words, put a definition on them, and said, oh, well, taxpayer can't mean what it normally means now. And it seems like you did the reverse, and that seems a bit arbitrary. Well, Your Honor, our position is that, you know, obviously the code defines the term as it does, but Congress has nonetheless used that term in different ways in different settings. And even within 6343, it has used the term taxpayer to refer to only individuals without using the adjective individual taxpayer to limit it. In 6343E, it uses the term taxpayer, but it refers to salaries and wages, which can only be earned by individuals. Well, there are certainly definitions, though, of economic hardship, excepting that perhaps taxpayer could have a different definition. There are certainly definitions of economic hardship that might pertain or that you could reasonably make them pertain to a taxpayer, and those would have more to do with business viability than individual suffering as sort of more of an emotional or individual suffering. Does that make sense? Well, as we laid out at pages 45 through 50 of our brief, we don't think that the meaning of economic hardship unambiguously includes businesses. I mean, the parties agree that hardship means suffering in privation, and what Lindsay Manor takes that to mean is that hardship means any taxpayer that's about to suffer a privation, you know, of material resources gets consideration for economic hardship without examining what the suffering and privation mean. And what we've tried to lay out at pages 45 through 50 is that there is a plausible reading of economic hardship that includes only individuals. And insofar as this Court may agree that there's a plausible reading that includes both of them, there is some ambiguity there because economic hardship is not defined. And Congress did give two express delegations to the Secretary to work out the levy relief provisions and to determine when an economic hardship actually exists. Before I let you sit down, could I come back to my hypothetical? Could the Commissioner define it to include only corporate taxpayers? Or at least we'd give you chevron deference there. Yeah, well, because the term is ambiguous, if the Secretary has the discretion, and the Secretary probably could come up with a standard of, you know, in his discretion, try to figure out a regulation that may apply to corporations and non-individuals. I mean, is that what you're saying? Yeah. Yes. Well, I think given that the term economic hardship is ambiguous, then the Secretary does have that kind of discretion. All right. Well, count me a skeptic. Your time's expired. Mr. Luby, you have some rebuttal time, if you wish. Thank you. With respect to the government's argument on mootness, we would assert that Lindsay Manor was not a separate taxable entity at the time it filed for receivership or was forced into receivership. It doesn't create a different taxable entity. They're still required to file tax returns. They're still required to pay taxes. They're still liable for the pre-receivership liabilities. I believe that Lindsay Manor Nursing Rehab Care Center was something that came into creation well after the fact, in order, after they applied for their certificate of need and received from the Department of Health a license to operate. So they had to go through that process. So Lindsay Manor was still very much a viable corporation. It didn't just cease to exist. Otherwise, they wouldn't have tried to or at least considered an offer in compromise with respect to those pre-receivership liabilities. So we would assert that the receivership really had no bearing on the fact of whether or not this issue should be addressed because Lindsay does have a personal stake in the outcome of the case. With respect to the economic hardship argument that the government makes, we would feel that it is not ambiguous. I think based on the plain and ordinary meaning of those terms and the context in which they are used within the statute itself, are indicating an intent and a congressional intent to have a levy released in situations in which an individual and non-individual taxpayers are suffering from a privation of material wealth or resources when there is a levy in place. That would make the most sense based on the way that the statute is constructed, the way the taxpayer is defined in the code. Congress did not give the IRS the unfettered discretion to limit economic hardship relief solely to individual taxpayers and just ignore all of the other legal entities that are out there that can suffer an economic hardship. The IRS can promulgate a series of factors that indicate what constitutes economic hardship for corporations. They're capable of doing so. They've done it before with respect to offers in compromise. They just chose not to use those temporary treasury regulations. So I would assert that in this particular situation, that the treasury regulation is simply an impermissible construction of the statute and it should be invalidated and the plain and ordinary meaning of the term taxpayer should apply under Section 6343A1D. Thank you. Thank you, Counsel.